# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**ROTHSCHILD PATENT IMAGING LLC,**

        **Plaintiff,**

    **v.**

**NIGHT OWL SP, LLC,**

        **Defendant.**

**CASE NO. 2:25-cv-00287-SPC-NPM**

**PATENT CASE**

**JURY TRIAL DEMANDED**

## NIGHT OWL'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

i

## <u>TABLE OF CONTENTS</u>

I.     STATEMENT OF THE RELIEF REQUESTED ...........................................1

II.    STATEMENT OF THE BASIS FOR RELIEF REQUESTED .....................1

III.   STATEMENT OF THE FACTS ...................................................................2

     A.    Procedural History.................................................................................2

     B.    The '797 Patent ...................................................................................3

IV.   LEGAL STANDARDS ...............................................................................5

     A.    Rule 12(b)(6). .........................................................................................5

     B.    35 U.S.C. § 101 .......................................................................................6

     C.    Rule 12(b)(6) on Direct Infringement Allegations ...............................8

V.    ARGUMENT...............................................................................................9

     A.    The Claims of the '797 Patent are Ineligible Under 35 U.S.C. § 101. .9

            1.    Step 1: The Claims of the '797 Patent are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images. ...................................................................................9

            2.    Step 2: The Claims of the '797 Patent Fail to Recite Any Inventive Concept. ...................................................................16

            3.    Nothing in RPI's Amended Complaint Alters the Eligibility Analysis...................................................................................18

            4.    No Factual or Claim Construction Disputes Prevent the Court From Ruling on § 101. ...........................................................20

     B.    RPI has Not Pleaded Facts to Support its Direct Infringement Allegations...........................................................................................21

VI.   CONCLUSION..........................................................................................25

## I.    Statement of the Relief Requested

Defendant Night Owl SP, LLC ("Night Owl" or "Defendant") respectfully requests that this Court:

a. Grant this motion;

b. Enter an order dismissing Rothschild Patent Imaging LLC's ("RPI") Amended Complaint with prejudice; and

c. Grant all such further relief as this Court deems just and appropriate.

## II.    Statement of the Basis for Relief Requested

Receiving, filtering, and transmitting images is an abstract concept ineligible for patent protection. The claims of U.S. Patent. No. 8,437,797 (the "'797 Patent"), which RPI asserts in this case against Night Owl, are directed to this abstract idea and do not claim any inventive concept sufficient to confer patent eligibility.

The '797 Patent attempts to claim the abstract idea of receiving photographs, filtering them "using a transfer criteria," and then wirelessly transmitting the filtered photographs to another device. The specification acknowledges that the recited image capturing devices can be "virtually any device structured to capture one or more digital images." '797 Patent at 3:47–48.  The filtering process can be performed manually by users who "may manually tag or embed the image(s) with data corresponding to the subject matter, theme, topic thereof." *Id.* at 9:9–11. Finally, the transmission of the photographs is done using admittedly conventional methods,

including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29–31. The '797 Patent therefore claims the practice of an abstract idea using conventional technology.

Additionally, RPI has failed to plead sufficient facts to support its allegations of direct infringement. RPI has not—and cannot—plead any facts sufficient to show that the accused Night Owl products meet the limitation of a "mobile device" as required by every independent claim in the '797 Patent.

Resolving these issues does not require discovery or claim construction. Plaintiff's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources litigating an invalid patent, Night Owl requests that the Court grant its motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.   Statement of the Facts

### A. Procedural History

On April 9, 2025, RPI filed a Complaint accusing Night Owl of infringing U.S. Patent No. 8,437,797, titled "Wireless Image Distribution System and Method." (Dkt. 1, "Compl." at ¶ 13.) Night Owl moved to dismiss the Complaint for asserting an ineligible patent, and for failing to state a claim for direct and induced infringement, . (Dkt. 12.) RPI then filed an Amended Complaint for Patent Infringement, this time without its claim for induced infringement. (Dkt. 22, "Amd.

Compl."). Night Owl now brings this Motion to Dismiss because the '797 Patent is still invalid per 35 U.S.C. § 101, and because the Amended Complaint still fails to state a claim for direct infringement.

### B.    The '797 Patent

The claims of the '797 Patent are "directed to a system and method for distributing at least one digital photographic image from a capturing device . . . to one or more receiving devices, wherein the receiving device(s) is cooperatively structured to automatically and/or selectively receive the digital photographic image(s) from the capturing device." ('797 Pat. at 2:17–24.) RPI asserts that Night Owl infringes "claim 9 of the '797 Patent." (Amd. Compl. at ¶ 25.) Claim 9 is representative and recites:

> 9. A method preformed [sic] by an image-capturing mobile device, comprising
>
> receiving a plurality of photographic images;
>
> filtering the plurality of photographic images using a transfer criteria; and
>
> transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images, wherein
>
> the transfer criteria is a geographic location of the image-capturing mobile device.

'797 Pat. at Cl. 9. Claim 9 is directed to a method of receiving images, filtering the images based on their content, and transmitting the filtered images between devices.

The specification discloses only generic computer components in functional

terms. For example, the capturing devices are described as "generally compris[ing] **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc., having the structures and/or mechanism capable of capturing digital photographic images." '797 Pat. at 3:45–58 (emphasis added). The generic nature of the "image-capturing mobile device" is further evidenced by RPI's own allegations. RPI alleges that the device is not limited to "cordless devices," is not limited to "tablets, PDA, laptops, or cell phones, does not need to be "battery-powered," and is any device "that can be moved." (Amd. Compl. at ¶¶ 28, 31, 32, 39.) The display assembly can be anything "structured and disposed to display to a user thereof various data, images, etc.[, and] may be virtually any size and may include **virtually any display device**, including but not limited to a liquid crystal display ('LCD')." *Id.* at 4:4–8 (emphasis added). The electronic storage medium can be anything "structured to electronically store the one or more digital photographic images thereon," and may include "an internal hard drive or other like mechanism," or "a removable memory card, Universal Serial Bus ('USB') drive, Firewire drive, flash drive, etc." *Id.* at 4:26–8, 4:34–36.

The technology disclosed in the specification is likewise generic. For example, the specification discloses that the claimed invention uses known modes of wireless transmission, including "short-range communication technology such as

Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29–31. The modes of communication are virtually unbounded because they may also "comprise a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *Id.* at 3:37–40. Finally, the specification provides that the crux of the alleged invention—image filtering—may be carried out by users manually selecting images, *id.* at 6:21–24, 27–32, or by "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image," *id.* at 9:6–8. Neither the specification nor the claims discloses *how* any such recognition software might work, but simply relies on others to develop that technology.

## IV.    Legal Standards

### A.    Rule 12(b)(6).

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although factual allegations are taken as true, legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet of taking allegations as true in a motion to dismiss "is inapplicable to legal conclusions"). "In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its 'consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matter

judicially noticed." *PPS Data, LLC v. Availity, LLC*, No. 3:11-cv-747-J-37TEM, 2012 WL 252830, at *1 (M.D. Fla. Jan. 26, 2012) (Dalton Jr., J) (citing *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B.      35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *Bilski v. Kappos*, 561 U.S. 593, at 611–12 (2010). In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are

directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 218 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323

(Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### C.  Rule 12(b)(6) on Direct Infringement Allegations

The sufficiency of any allegations of direct infringement in a complaint are measured by the *Iqbal* and *Twombly* standards. *Sundesa, LLC v. JH Studios, Inc*., No. 8:19-CV-1809-T-36AAS, 2020 WL 4003127, at *3 (M.D. Fla. July 15, 2020) ("The plausibility standard of *Twombly* and *Iqbal* is utilized to evaluate complaints alleging patent infringement."). Under this standard, a plaintiff must provide the grounds of his entitlement to relief, and must allege specific facts in support of each such claim, sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. "'[A] plaintiff cannot assert a plausible claim for infringement under the *Iqball Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.'" *Askan v. Faro Techs., Inc.*, No. 6:23-CV-920-PGB-DCI, 2023 WL 7411243, at *3 (M.D. Fla. Oct. 6, 2023), report and recommendation adopted, No. 6:23-CV-920-PGB-DCI, 2023 WL 8868494 (M.D. Fla. Dec. 22, 2023) (citing *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)) (brackets in original).

## V. Argument

### A. The Claims of the '797 Patent are Ineligible Under 35 U.S.C. § 101.

#### 1. Step 1: The Claims of the '797 Patent are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images.

Step one of the *Alice* inquiry requires an examination of the claims to determine whether their "focus" or "character as a whole" is directed to excluded subject matter. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *see also Dealertrack Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). The goal of this examination is to identify the basic concept at the "heart" of the claims. *See*

*Ultramercial*, 772 F.3d at 714-15 (abstract idea at the "heart" of the eleven step claim was using advertising as an exchange or currency). For computer-implemented claims, "the first step of the *Alice* inquiry . . . asks whether the focus of the claims is on specific asserted improvements in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

The '797 Patent claims the combination of two ideas that the Federal Circuit has repeatedly held to be abstract—data communication and data manipulation—and invokes generic computer components used in their conventional manner to practice these ideas. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.") (collecting cases); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (finding patent claim "directed to . . . collecting, displaying, and manipulating data" abstract); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) ("As we have explained in a number of cases, claims involving data collection, analysis, and publication are directed to an abstract idea.").

As to the first idea, data communication, the claims rely heavily on technical-

sounding terms that ultimately amount to sending and receiving information. Claim 1 requires "a wireless receiver" and "a wireless transmitter." These elements are abstract because "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019), *cert. denied*, No. 19-1299. The claims' use of "technical jargon" such as "receiver" and "transmitter" is no savior because "[c]laims do not become eligible simply because they are written or characterized in a 'highly technical' manner." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 at n.2 (Fed. Cir. 2020) (finding error in a district court's reasoning that certain claims' "highly technical" nature supports the conclusion that they are not directed to an abstract idea).

As to the second idea, data filtering also does not save the claims because the Federal Circuit has held that this too is an abstract idea. The claims of the '797 Patent require filtering photographs "using a transfer criteria." '797 Pat. at Independent Claims 1, 5, 6, 8, 9, 13, 16. Filtering photographs is a form of data manipulation because it involves organizing information (photographs) according to a rule (*e.g.*, the "title of the image(s) 25, subject matter of the image(s) 25, and/or any of the other data component(s) of the digital photographic image(s) 25 . . ." '797 Pat. at 6:28–30). This is an abstract idea that people have long performed without the aid of technology. *See, e.g.*, *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,

827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[F]iltering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract.") For example, it is common practice to receive a collection of photographs (*e.g.*, a stack of Polaroids), pick certain ones depending on their content (*e.g.*, pictures of one's child), and forward those selected photographs onward (*e.g.*, to the child's grandparents).

Several cases are particularly applicable to the claims at hand. In *TLI*, the asserted patent claimed a method of "manually or automatically" assigning "classification data . . . to digital images and sending those images to a server [that] extracts the classification data and stores the digital images, 'taking into consideration the classification information.'" *TLI Communications, LLC v. AV Automotive LLC*, 823 F.3d 607, 610 (Fed. Cir. 2016). Representative Claim 17 in *TLI* is similar to the claims at issue here:

> 17. A method for recording and administering digital images, comprising the steps of:
>
> recording images using a digital pick up unit in a telephone unit;
>
> storing the images recorded by the digital pick up unit in a digital form as digital images;
>
> transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images;
>
> receiving the data by the server;

> extracting classification information which characterizes the digital images from the received data; and
>
> storing the digital images in the server, said step of storing taking into consideration the classification information.

*Id.* The Federal Circuit held that Claim 17 was drawn to the abstract idea of "classifying an image and storing the image based on its classification." *Id.* at 611. The recited physical components—"a telephone unit" and a "server"—"merely provide a generic environment in which to carry out this abstract idea," not "a specific improvement to computer functionality." *Id.* at 611–12. "The specification [also] fail[ed] to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms," making them "merely conduits for the abstract idea." *Id.* at 612.

*TLI* was applied in an analogous case to invalidate another image classification patent. *See Secure Cam, LLC v. Tend Insights, Inc.*, 351 F. Supp. 3d 1249, 1252 (N.D. Cal. 2018). The representative claim recited:

> 1. A digital camera for automatically categorizing captured image data, the digital camera comprising:
>
> a processor within the digital camera for capturing image data;
>
> an analysis module within the digital camera coupled to the processor and configured to perform image data analysis on the captured image data at the time of image capture by the digital camera and to automatically generate, responsive to the preformed image data analysis, a category tag for the captured image data; and

a memory for storing the generated category tag in association with the captured image data for categorizing the captured image data.

Similar to *TLI* and the '797 Patent in this case, the claims relate to "collecting digital images, analyzing them and categorizing them." *Id.* There, as here, the claim only requires generic components performing abstract functionality.

Similarly, in *Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*, another patent by the same named inventor as the '797 Patent was held to be invalid under § 101 for being directed to nothing more than "the abstract idea of associating traditional information like date, location, and photographer with a picture and securing the image." Case No. 3:19-CV-02659-JD, 2020 WL 1307016, at *3 (N.D. Cal. Mar. 19, 2020). There, the claim at issue recited only unspecified "user verification," "capture," "locational information," "date and time," "processing" and "encryption module[s]," without an inventive concept. *Id.* This same Rothschild patent was held to be invalid by a separate court nearly simultaneously, which, when combined with a history of extracting nuisance settlements across a 46-case campaign, supported an award of attorneys' fees. *See Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 266 (D. Del. 2020). For comparison, the '797 Patent in this case has been asserted over 80 times.

Likewise, in *Content Extraction*, the Federal Circuit held that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that

recognized data in a memory." *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). The court held that the "concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* The claims of the '797 Patent are similarly unbounded in their recitation of receiving data, filtering data, and transmitting data, and are likewise directed to this abstract idea.

Although the specification alludes to "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image," it fails to teach how such software would work, and the claims do not include any specific implementation thereof. '797 Pat. at 9:6–8. Consequently, they are directed to the idea of filtering images. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("There is nothing in claim 1 that is directed to how to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself."); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding ineligible claims that do not recite "a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."). Moreover, "[the Federal Circuit has] treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F. 3d at 1354. Therefore, filtering images

is an ineligible abstract idea. The '797 Patent's claims fail step one because they are directed to this abstract idea and invoke generic computer components only as a means for implementing it.

### 2.    Step 2: The Claims of the '797 Patent Fail to Recite Any Inventive Concept.

Because the claims of the '797 Patent are directed to a patent-ineligible abstract idea, the Court must consider the second step of the *Alice* test. This step requires the Court to decide "whether the remaining elements, either in isolation or in combination with the non-patent-ineligible elements, are sufficient to transform the nature of the claim into a patent-eligible application." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366–67 (Fed. Cir. 2015). When looking at computer-related technology such as that in the '797 Patent, courts determine whether there are "specific improvements in the recited technology that go beyond 'well-understood, routine, conventional activities' and render the invention patent-eligible." *BASCOM*, 827 F.3d at 1349 (citing *Alice*, 134 S. Ct. at 2359).

Nothing in the claims amounts to something "significantly more" than the abstract idea of filtering images such that the claims rise above this abstract idea because they rely entirely on conventional components performing in a conventional manner. *See, e.g.*, '797 Pat. at Cl. 1 ("a wireless receiver," "a wireless transmitter," "a processor," "receive a plurality of photographic images"). These components merely provide a generic environment in which "well-understood, routine, activities

previously known to the industry" are used to carry out the abstract idea of receiving, filtering, and transmitting images. *See TLI*, 823 F.3d at 614 (original brackets omitted).

For example, the specification states that a capturing device "generally comprises **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc., having the structures and/or mechanism capable of capturing digital photographic images." *Id.* at 3:45–58 (emphasis added). The specification does not discuss the "wireless transmitter" or the "wireless receiver" recited in Claim 1, 5, 6, and 8 in any detail. What it does describe—in purely functional terms, and in well-known examples— is the modes of wireless transmission that may be used in the claimed invention, listing "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')," or other "wireless network(s) and/or communication protocol" such as "a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *See id.* at 3:29–40.

RPI has previously alleged that the "processor" saved the claims from abstraction because it is purportedly not generic. *Rothschild Patent Imaging LLC v. Gnome Foundation*, No. 4:19-cv-05414-HSG, Dkt. 34 at 12 (N.D. Cal.). The

"processor" element is insufficient to confer patentability because it is a generic component. This is irrefutable because the '797 Patent's specification does not mention a processor at all, let alone a non-generic one, and so there are no details of its functionality that could render it anything but generic.

In sum, the claimed elements of the '797 Patent, individually and as an ordered combination, do not transform the claims into patent-eligible subject matter because they behave exactly as expected according to their normal use, and in a well-understood, routine, and conventional manner.

### 3.    Nothing in RPI's Amended Complaint Alters the Eligibility Analysis.

RPI's Amended Complaint makes numerous unsupported and conclusory allegations regarding the eligibility of the '797 Patent. However, the Court is under no obligation to accept conclusory legal opinions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

RPI now alleges that the inventive concepts are (1) "using an image-capturing mobile device's geographic location as a transfer criterion," (2) using a "geographic location transfer function as an intelligent filter" [which is indistinguishable from the first alleged inventive concept], and (3) "peer-to-peer" distribution of images. (Amd. Compl. ¶¶ 19–21.) As to the first two, the alleged inventiveness is contradicted by RPI's assertion that any device that "can be moved" (*i.e.*, every

device) is a mobile device. (*See Id.* ¶ 39.) If this purportedly inventive concept can be practiced by a stationary device that does not change geographic locations (like the device accused in RPI's Amended Complaint), then the geographic location transfer criteria amounts to simply sending images and cannot bean inventive concept. As to the third alleged inventive concept, the specification contradicts RPI's assertion that peer-to-peer connectivity is inventive by including it in a laundry list of conventional communication protocols that the patent did not purport to invent: "Further, the interactive computer network 65 and/or other communication protocol may be wireless and/or wired, and includes, for example, the World Wide Web, LAN, WAN, peer-to-peer ("P2P") network, direct connection, Bluetooth, PAN, cellular, etc." ('797 Pat. at 6:57-61.)

Notably, most of the allegations regarding the technical solution and inventiveness are made without any citation or support from the '797 Patent. (*See, e.g.*, Amd. Compl. ¶¶ 12–24.) Additionally, the Amended Complaint admits that the alleged issues that the '797 Patent seeks to address are not technical problems but rather issues of "require[ing] humans to act, such as selecting and transmitting images, when humans failed to act." (*Id.* ¶ 13.)

- "These limitations are intended to address the situation in which images can be filtered and transmitted . . . such as when party guests are attending the same party and desire to transmit images . . . which the patent explains was a problem resulting in human failure in transmitting the images." (*Id.* ¶ 15.)

- "Unlike the prior manual selection of images based on the content of the images . . . the image-capturing device is a substantial improvement over the manual methods." (*Id.* ¶ 18.)

- "In conventional image distribution systems, filtering typically occurred based on . . . user-selected preferences. Users manually selected which images to share and manually attached them to emails . . . These traditional approaches require active user intervention . . ." (*Id.* ¶ 19.)

- "In particular, a big flaw in the prior art systems was that they required human intervention which often resulted in the desired action (transmitting specific images) to fail." (*Id.*)

- "The system implements a real-time or near-real-time distribution that occurs immediately . . . without requiring manual user intervention." (*Id.* ¶ 21.)

- "This technological improvement also overcomes the prior art problem of the device failing to transmit images due to failure of the user to interact with the device." (*Id.* ¶ 24.)

Ultimately, the Amended Complaint's allegations do nothing more than generically describe the benefits of automating a human endeavor, reinforcing that the '797 Patent merely claims the abstract idea of receiving, filtering, and transmitting images using conventional components.

### 4. No Factual or Claim Construction Disputes Prevent the Court From Ruling on § 101.

The issue of the patent eligibility is ripe for the Court's consideration. This case is unlike *Berkheimer* or *Cellspin*, where plaintiffs' non-conclusory allegations were sufficient to establish at least a factual dispute as to whether the patents-at-issue claimed an inventive concept. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in

a purportedly unconventional manner." 881 F.3d 1360, 1369 (Fed. Cir. 2018). In *Cellspin*, the amended complaint identified "several ways in which its application of capturing, transferring, and publishing data was unconventional." 927 F.3d 1306, 1316 (Fed. Cir. 2019).

Here, there is no factual dispute whether the '797 Patent claims unconventional mechanisms of implementing the abstract idea. Neither the '797 Patent nor the Complaint contain any such allegation. There are also no claim construction issues affecting the *Alice* analysis because Plaintiff has not proposed any constructions of the '797 Patent's terms that would alter the ineligibility of the claims. In fact, Plaintiff's interpretation of the term "mobile device" as being broad enough to encompass immobile devices (Amd. Compl. ¶¶ 27–33, 39) strongly counsels in favor of invalidation if the claimed idea can be practiced by any and all generic hardware.  The issue of the patent eligibility is thus ripe for the Court's consideration.

### B.  RPI has Not Pleaded Facts to Support its Direct Infringement Allegations.

Claim 9 of the '797 Patent ("Asserted Claim") requires an "image-capturing ***mobile device***" "transmitting . . . to a second image capturing device." '797 Patent, Cl. 9. In fact, all of the independent claims of the '797 Patent specifically require a "image-capturing ***mobile device***." '797 Patent, Cls. 1, 5, 6, 8, 9, 13, and 16. However, the Amended Complaint shows accused products do not meet this limitation.

Plaintiff's Amended Complaint accuses a stationary camera as meeting the limitation of a "mobile device." (*See* Amd. Compl. at ¶ 26.) ("CAM-WNIP2LWA, CAM-2PK-WNIP8LBU, CAM-WNIP2LBU, CAM-WNIP2LBU-R, CAM-2PK-WNIP2LBU (used herein as an exemplary infringing product and referred to as 'the camera') ("image-capturing mobile device")"). Plaintiff specifically labels a non-mobile security camera as the "image-capturing mobile device":



(https://nightowlsp.com (annotated)).

(Amd. Compl. at 14.) As further evidence that the accused device is not "mobile," the listed components that Plaintiff references in its complaint includes a "Power Adapter" and "Mounting Hardware and Screw Packets":



([https://nightowlsp.com/products/wi-fi-ip-plug-in-1080p-spotlight-cameras-with-2-way-audio-and-audio-alerts-and-sirens-2-pack-white](https://nightowlsp.com/products/wi-fi-ip-plug-in-1080p-spotlight-cameras-with-2-way-audio-and-audio-alerts-and-sirens-2-pack-white) (annotated)).

(Amd. Compl. at 22.) While Plaintiff makes several references to "mobile devices such as smartphones or tablets," the complaint makes clear that the smartphones and tablets are the "***second*** image capturing device."  (Amd. Compl. at 26) (emphasis added).



([https://nightowlsp.com/products/wi-fi-ip-plug-in-1080p-spotlight-cameras-with-2-way-audio-and-audio-alerts-and-sirens-2-pack-white](https://nightowlsp.com/products/wi-fi-ip-plug-in-1080p-spotlight-cameras-with-2-way-audio-and-audio-alerts-and-sirens-2-pack-white) (annotated)).

(Amd. Compl. at 23.) "[T]he camera sends real-time alerts by sending the captured videos and images . . . to the Night Owl Protect application . . . installed on the ***user's mobile device ('second image capturing device')***."

RPI attempts to get around this obvious and fatal flaw in its infringement

arguments by merely concluding that '797 Patent does not require that the image-capturing mobile is "cordless," is not limited to "tablets, PDA, laptops, or cell phones," and that "[a] device can be moved is a mobile device." (Amd. Compl. at ¶¶ 27–39.)

First, this argument is nonsensical on its face. Any device can be moved with sufficient tools or force. If any device that can be moved is a mobile device, then every device is a mobile device, and RPI has improperly read the term "mobile" out of the claim entirely. Second, as addressed above, RPI alleges that the use of geographic criteria is the inventive concept of the '797 Patent. Claim 9 also requires that the "transfer criteria is a geographic location." '797 Patent at Cl. 9. The use of geography is entirely moot if the device at issue does not change geographic location. Finally, the Federal Circuit has weighed in on arguments like this before. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) ("The crucial question was whether, as [Defendant] argued, the terms [mobile and portable] should not be construed so broadly such that they covered 'fixed or stationary products that are only theoretically capable of being moved.'"). Like the plaintiff in *Eon Corp. IP Holdings*, RPI is arguing that "'mobile' should be broadly interpreted to include, essentially, anything that is theoretically capable of being moved." *Id.* at 1321; *see also* Amd. Compl. at ¶ 39. RPI does not, and cannot, point to anything in the specification supporting that the term "mobile" refers to such

24

and abstract concept, much less one that effectively reads the term out of the claim language. "[Plaintiff's] position is completely untethered to the context of . . . this case." *Eon Corp. IP Holdings*, 815 F.3d at 1321.

Thus, RPI has not pleaded any facts sufficient to show how a camera meant to be permanently mounted to a structure meets the limitation of a "mobile device." There is no reasonable interpretation of RPI's complaint that establishes the accused Night Owl products meets the limitation required in every independent claim of the '797 Patent.

RPI will not be able to prevail even if this case proceeds into costly discovery. The pleading stage is when this specific dispositive issue can be most efficiently addressed. Because RPI has not and cannot allege facts sufficient to show that all limitations are met, it has failed to state a claim for direct infringement.

## VI.   Conclusion

RPI has failed to state a claim because asserted U.S. Patent No. 8,437,797 is directed to patent-ineligible subject matter. Furthermore, RPI has failed to plead sufficient facts to support its allegations of direct infringement. Because leave to amend would be futile, Night Owl respectfully requests the Court grant its motion to dismiss RPI's claims with prejudice.

Dated: June 26, 2025              /s/*Michael A. Vincent*
                                             Eleanor T. Barnett, Esq. (FL 355630)
                                             ARMSTRONG TEASDALE LLP
                                             355 Alhambra Circle, Suite 1200
                                             Coral Gables, Florida 33134
                                             Telephone: (305) 371-8809
                                             Email: ebarnett@atllp.com
                                             Email: miamiefiling@atllp.com

                                             Neil J. McNabnay
                                             Texas Bar No. 24002583
                                             mcnabnay@fr.com
                                             Ricardo J. Bonilla
                                             Texas Bar No. 24082704
                                             rbonilla@fr.com
                                             Michael A. Vincent
                                             Texas Bar No. 24105738
                                             vincent@fr.com
                                             FISH & RICHARDSON P.C.
                                             1717 Main Street, Suite 5000
                                             Dallas, Texas 75201
                                             Telephone – (214)747-5070
                                             Facsimile – (214) 747-2091

                                             **ATTORNEYS FOR DEFENDANT**
                                             **NIGHT OWL SP, LLC.**

**<u>Local Rule 3.01(g) Certification</u>**

I, Michael Vincent, certify that I conferred by phone on June 26, 2025 with opposing counsel, Steven Kalberg, in a good faith effort to resolve the Motion to Dismiss for Failure to State a Claim and no resolution was reached.

<u>/s/*Michael A. Vincent*  </u>
Michael A. Vincent